Hamilton National Bank of Chattanooga and
Employers Liability Ins. Corp., Ltd.,
Complainants,

*v.*

Jean Champion, et al.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

Taber, Chambliss & Stophel and Moon, Anderson, Harris & Dineen, Chattanooga, for appellants.

Harry Berke, Chattanooga, for appellees.

Mr. Justice Swepston delivered the opinion of the Court.

This case is here on demurrer. This suit was filed against Jean Champion, Gloria Champion Hayter and Walter C. Champion, children of Walter C. Champion, Sr., deceased, and Harry Berke, their attorney. The bill seeks an injunction to restrain the defendants from further prosecuting a suit at law pending in the Circuit Court of Hamilton County against complainants and to prohibit their prosecuting said action at law in any similar case in any Court except the Chancery Court of Hamilton County.

The defendants filed a demurrer which was sustained and hence this appeal.

The bill alleges that the said bank qualified as administrator of the estate of Walter C. Champion, Sr., who died about February 24, 1944, and that said surety company is the surety on its administration bond; that the said three children were minors at the date of the death of their father, but they became of age respectively on May 7, 1944, August 23, 1948 and September 7, 1950. That about September 26, 1955, a bill in Chancery was filed in behalf of said children seeking to hold the said bank liable for many alleged violations of fiduciary relations in connection with the administration of the said Champion estate, particularly the claim that said bank fraudulently sold the real estate hereinafter referred

to in a second suit which has been filed and which is the subject of the attack made in the present bill in Chancery; that in accordance with the prayer of said bill the bank offered to make available its voluminous records but that no proof was taken and the suit was dismissed without prejudice on March 16, 1956.

That said complainants are guilty of gross laches in the filing of the above mentioned suit and that in the meantime two attorneys for the bank and four officers of the bank who were familiar with the administration have died; that on March 29, 1956, said children acting through their attorney, Harry Berke, filed an action at law in the Circuit Court of Hamilton County against said bank claiming over $200,000 damages, alleging that the bank carelessly, negligently and fraudulently paid excessive fees to certain attorneys without any consideration for any services. The bill is garbled at this stage because it appears from the record that the intention was to allege that said action at law was for over $200,-000 damages for carelessly, negligently and fraudulently permitting certain real estate to be foreclosed in default of the payment of interest installment of $160, although the bank at that time had more than enough money of the estate in its hands to pay said indebtedness and that said foreclosure was permitted to take place without notice to the plaintiffs in said action at law; and that they were damaged by the unwarranted payment of $15,000 attorneys' fees.

The bill then alleges that this property was purchased from the complainant bank in 1941 by said Walter C. Champion, Sr., deceased, for $11,500 cash and notes payable $1,000 a year for ten years executed by him; that

at the time of the foreclosure and sale on October 31, 1944, there were delinquent interest installments and taxes against said property and that said foreclosure was made by the bank upon the advice of its counsel who felt that it was best for the interests of the estate and that the sale of same for $11,000 cash was a fair market value of the property at the time; that the property was sold to one Norman Thomas who is not in any way connected with said bank, and that the mother of said children or the said Jean Champion, who was of age at that time, could have purchased the property if they had so desired.

The bill then goes into great detail in reciting the proceedings that were had in connection with the administration of the estate with relation to large claims against the said estate for violations of OPA and for income tax claims, as well as State inheritance tax claims; also with reference to suits by Mrs. Emma C. Champion, the mother of said children, against the estate for large alimony claims and alleged fraud on the part of her husband in converting some of her personal property and misappropriating the proceeds.

It further appears from the bill that the administration has not yet been closed and that proceedings for final settlement were pending at the date of the filing of the bill, to wit: April 25, 1956.

The bill further alleges that its defense in the Circuit Court is hampered by difficulties and complications too confusing and perplexing for investigation and solution in a Court of law because of the alleged necessity for complicated accounting and that the respondents seek

in their suit at law to assert an unfair advantage in their attempt to recover the difference between the fair and reasonable value of the real estate involved in the foreclosure of the real estate at the time of the foreclosure and its present value, the difference of 11 or more years.

The bill alleges its conclusions, (1) that the case involves complicated accounting of a nature over which the Chancery Court has inherent jurisdiction, (2) that said bank as defendant in the action at law, does not have an adequate remedy at law, but has a meritorious equitable defense consisting of laches of which they cannot avail themselves in a court of law; (3) that the case involves fiduciary relations or a trust and is within the inherent equity jurisdiction, (4) alleged multiplicity of suits.

The demurrer of the defendants to the present bill, except the first ground which is not specific and is therefore a nullity, may be summed up as follows: That the bill shows on its face that the Circuit Court has jurisdiction of the matters stated in the declaration and that the Chancery Court does not have jurisdiction because it is a suit for unliquidated damages; that as a matter of law the defendants to the present bill were and are entitled to select the forum in which they wish to file their suit for unliquidated damages and that under T.C.A. sec. 16-511, the Circuit Court can either try the case as an equity case, or transfer it to Chancery, but if it should retain jurisdiction, then every item of defense charged in the bill can properly be placed at issue before a court or a jury in the Circuit Court; and that a judgment for either the plaintiffs or the defendants in the Circuit

Court would end the matter sued upon in the Circuit Court.

The demurrer further states that there is a multiplicity of suits only because of the complainants filing this bill in equity. And last, that the suit was filed within the statute of limitations of 10 years for suits against executors and their bondsmen and that the allegations of the bill that the defendants are guilty of laches is inconsistent with their said rights under the statute of limitations.

The Chancellor wrote a full opinion. He did not expressly either overrule or sustain all of the grounds of the demurrer but he apparently sustained some of the grounds because beginning at the bottom of R. 53, he stated:

"This Court is of the opinion that the Circuit Court has concurrent jurisdiction of this matter under Code sec. 16-511, and where the two Courts have this parallel authority the jurisdiction of the Court which first attaches must prevail and equity will not for the mere purpose of obtaining exclusive jurisdiction restrain the action at law."

Then after stating that he considers the grounds which are set up in the bill as a basis for equity assuming jurisdiction, seem to be of doubtful merit under the circumstances, he reaches the conclusion that;

"The matters in litigation here are of a nature over which a Circuit Court has jurisdiction and there defenses which may also be interposed in the law Court, giving defendant a fair and adequate remedy (defense) at law. The Circuit Court of Hamilton County having assumed jurisdiction of this cause has full and complete jurisdiction to hear it. * * *

212

The assignment of error on appeal in behalf of the bank are 10 in number and they refer respectively to each of the 10 grounds of demurrer and assert that the Court erred in sustaining said grounds.

■ Clearly, the Chancellor was in error in holding that T.C.A. sec. 16-511 applies. Counsel for appellee who has devoted a large part of his brief in support of the same proposition is likewise in error. This Code section applies only to equitable causes or as stated in the statute itself, any suit of an equitable nature which is brought in the Circuit Court by mistake, of course. The purpose as stated in *Sewanee Mining Co. v. Best & Co.*, 40 Tenn. 701, 702, is to prevent the dismissal of the plaintiff's equitable suit where he has mistakenly brought it in a law Court and the statute provides that the Circuit Judge may either retain the case and try it sitting as a Chancellor, or transfer it to equity where it should have been filed in the beginning. But as clearly stated in annotation No. 8 under the statute the above case and the others cited, particularly *Morgan v. Layne,* 165 Tenn. 513, 56 S.W.2d 161, this section does not mean that, in a case of legal character, the Circuit Court may assume the functions of a Court of Equity merely because some equitable defense is set up, or a case has developed in proof, of which a Court of Equity might have exercised a concurrent jurisdiction, if that forum had been selected in the first instance.

■ If on the other hand, it is such an action that may be filed either in a Court of law or Court of Chancery, that statute has no application whatever and the rule then applies that in instances where the two Courts have

concurrent jurisdiction, the one first obtaining jurisdiction shall retain the same.

Other than as provided by said statute the Circuit Court has no equity powers whatever.

Despite this error in the Chancellor's opinion, however, we think that the conclusions of the complainants in this bill as to why equity should issue an injunction are of doubtful merit except possibly the question of laches. This is a very unusual case in that the complainant does not offer to confess judgment for the amount sued for in the Circuit Court and yet it is readily seen why they would be unwilling to do so and why it would be unjust to require them to do so. We are not able to see just why the complicated accounting is going to be necessary as a defense to the charge made with reference to either the foreclosure and sale of the real estate or the payment of $15,000 attorneys fees. Ordinarily it is said that an accounting before a jury is improper and it certainly is because the final objective of the accounting is normally to reach a balance due in favor of one party and against the other. In the present case, however, no such situation exists; the bill recites in detail the various proceedings that were necessary in the handling of the estate, as hereinbefore described, and if this proof can be made by competent witnesses the jury will be just as well able to decide the only two questions of fact as would a special master or a commissioner. If, however, the complainants should suffer in said legal hearing by reason of the death of the parties aforementioned, then of course the question of injury on account of laches would become pertinent.

It, therefore, seems to us that the proper disposition to make of this case is to affirm the action of the Chancellor in refusing to issue the injunction, let the case proceed at law, and in the event judgment is obtained against the bank by reason of its inability to make its proof in defense on account of the laches and the loss of testimony through the death of witnesses, then to reserve to the bank the right to file another suit for the purpose of enjoining the enforcement of said judgment. In other words, the complainants may either dismiss the present bill without prejudice to its right to file another bill to enjoin the enforcement of an unjust judgment where it appeared that laches had worked an injury to them with reference to their defense of the suit at law, or this present bill may be retained with the right to amend the same at the proper time to accomplish the same end.

We, therefore, affirm the decree of the Chancellor.